# 2002 DTA 79

RECEIVED
APR 11 2003
SERIALS DEPT.
HARVARD LAW SCHOOL LIBRARY

## TRIBUNAL DE CIRCUITO DE APELACIONES
## CIRCUITO REGIONAL III DE ARECIBO/UTUADO

HECTOR M. VEGA MIRANDA Y OTROS
Apelantes

v.

DAVIS & GECK, TYCO; COMPAÑIA DE SEGURIDAD ABC; JOHN DOE
Apelados

Núm. KLAN-2001-00684

San Juan, Puerto Rico, a 20 de marzo de 2002

Panel integrado por su Presidente, el Juez Soler Aquino y
los Jueces Colón Birriel y Escribano Medina

Colón Birriel, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

### I

Héctor M. Vega Miranda, Ramonita Ginés Batista, Juan A. Montoyo, Ariel Vázquez, Luis Mercado Ortiz, por sí y en representación de sus respectivas Sociedad de Gananciales, (los *"apelantes"*), solicitan la revisión de una **Sentencia** dictada por el Tribunal de Primera Instancia, Sala Superior de Arecibo (el *"Tribunal"*), el 22 de mayo de 2001 y archivada en autos copia de su notificación el 12 de junio del mismo año; en el caso *Héctor M. Vega Miranda, et al v. Davis & Geck, Tyco, et al*, Civil Número CPE-1999-0224, sobre Orden de Entredicho Provisional, *Injunction* Preliminar, *Injuction* Permanente, y Daños y Perjuicios. El dictamen desestimó en su totalidad la demanda presentada por los apelantes, por entender que carecían de una causa de acción válida en contra de las codemandada Davis & Geck, (la *"apelada"* o *"Davis"*).

### II

El 14 de julio de 1999, los apelantes presentaron demanda bajo juramento, al amparo de la Constitución del E.L.A. de P.R. Artículo II, § 1, 7, 8 y 16; Enmienda IV de la Constitución de E.U.; y la ley Federal Omnibus Crime Control and Safe Streets Act of 1968, enmendada por el Electronic Communications Privacy Act, en contra de Davis, en la que, entre otras cosas, reclamaban habérsele violado su derecho a la intimidad, al ésta instalar cámaras de seguridad que grababan imágenes y sonido, en áreas de alta expectativa de intimidad. Por su parte, Davis contestó la demanda negando y admitiendo alegaciones, y alegando entre sus defensas afirmativas, que había reforzado la seguridad en su planta, a raíz de una serie de actos vandálicos, amenazas de bomba, robo y cesantía de más de 100 empleados.

Luego de celebrado el descubrimiento de prueba, el juicio quedó señalado para los días 19, 20 y 21 de junio de 2000. Así pues, el primer día del juicio, las partes acordaron someter el caso por estipulaciones, reuniéndose posteriormente a fin de estipular aquellos hechos que no estuvieran en controversia. El 12 de enero de 2001, presentaron moción conjunta intitulada *"Moción para Someter Estipulaciones de Hechos de las Partes y Solicitar Término de Quince Días para Presentar Alegatos Simultáneos"*. **Apelación**, *Moción...*, a la pág. 34 del apéndice. Un mes después, 12 de febrero de 2001, presentaron simultáneamente sus respectivos alegatos. El alegato de la apelada según determinó el Tribunal *"descansó exclusivamente en las estipulaciones de hechos de las partes. Sin embargo, los apelantes presentaron en su alegato hechos que no fueron materia de estipulación"*. Así las cosas, la apelada se opuso a la presentación del alegato de los apelantes, en escrito intitulado *"Moción Eliminatoria Sobre Alegato de los Demandantes"*. **Apelación**, *Moción...*, a las págs. 114-119 del apéndice. Los apelantes no replicaron la oposición de los apelados, procediendo el Tribunal a declarar Con Lugar la moción eliminatoria de los apelados y en consecuencia, eliminó los hechos y documentos que no fueron objeto de estipulación.

Finalmente, el 22 de mayo de 2001, el Tribunal emitió la Sentencia que nos ocupa, desestimando en su totalidad la demanda presentada por los apelantes y consignando en ella varias determinaciones de hecho, las que están basadas en las estipulaciones de hechos presentadas por las partes. **Apelación**, *Notificación y Sentencia*, a las págs. 120-143 del apéndice. La mayoría de los hechos estipulados versan sobre reuniones del personal gerencial de Davis con los apelantes, en el proceso de la investigación realizada a raíz de los actos vandálicos ocurridos. Estando en controversia (con relación a la apreciación de la prueba), si erró el Tribunal al concluir que no se violó el derecho a la intimidad de los apelantes, al colocarse una cámara de video en el área de los *"lockers"* del área de *"Attaching and Winding"*, nos limitaremos a transcribir aquellas determinaciones de hecho que, a nuestro juicio, recogen los hechos más importantes para la dilucidación de la controversia ■

*"GENERALES*

*1. El 1 de marzo de 1999, ocurrió un vandalismo en la cafetería de Davis.*

2

2. El 12 de mayo de 1999, Davis fue objeto de una amenaza de bomba. En esa misma fecha alguien vandalizó la fotocopiadora que queda en el cuarto que da a uno de los pasillos principales.

3. El 14 de mayo de 1999, Davis fue objeto de una segunda amenaza de bomba. En esa misma fecha estaba anunciado la cesantía de aproximadamente 130 empleados de Davis por reducción de personal.

4. También ocurrió un acto de vandalismo en los lockers de Attaching & Winding (en adelante A & W), y un robo en la caja registradora de la cafetería.

5. A la luz de estos eventos, Julián Herencia, gerente de la planta, tomó la decisión de reforzar las medidas de seguridad.

6. La instalación de cámaras de video se contrató inicialmente por un período de un mes, del 14 de mayo al 15 de junio de 1999. El sábado, 15 de mayo de 1999, se instalaron cinco cámaras.

7. Durante el mes de mayo, tres cámaras fueron vandalizadas y dos de esas tres desaparecieron. El 22 de mayo de 1999, se instalaron dos cámaras adicionales y se reemplazaron las tres cámaras que habían sido vandalizadas.

8. Davis extendió el contrato por un mes adicional, del 15 de junio al 15 de julio de 1999. Las cámaras dejaron de operar el 15 de julio de 1999 y fueron removidas luego de esa fecha.

9. Las cámaras se ubicaron en los siguientes lugares de la planta: cafetería; dos pasillos centrales; área de lockers que fue vandalizada y área de la fotocopiadora que fue vandalizada.

## JUAN RAMON MONTOYO COLON

10. Montoyo Colón, trabajaba como group leader en el área de Attaching & Winding para mayo y junio de 1999.

11. El área de lockers de A & W tiene cuatro paredes. Entre las cuatro paredes en que Montoyo vio la cámara, no hay inodoros ni hay lavamanos. En el área de lockers no había espejos.

12. En uno de los extremos del área de lockers hay una puerta que abre al pasillo. Esa es una puerta grande; es ancha. En ese pasillo hay tránsito de empleados. Al abrirse esa puerta, cualquier persona transitando por el pasillo lo podía ver a él parado frente a su locker.

13. La única prenda de vestir que Montoyo guardaba en su locker era un abrigo o jacket.

14. A Montoyo no le consta que Davis haya escuchado conversaciones de sus empleados. Tampoco le consta que hubieran cámaras en todo la planta.

## JOSE RAUL ROSADO GONZALEZ

15. José Raúl Rosado González trabajaba como group leader en el área de A & W de Davis durante todo el año de 1999.

16. Rosado tenía un locker asignado en el área de lockers de A & W. Era un locker pequeño en donde Rosado guardaba herramientas y también las redecillas del pelo y barbillas. Rosado no se cambiaba de ropa allí.

17. Rosado no ha escuchado grabación alguna de Davis. A Rosado no le consta que Davis escuchara conversaciones de sus empleados.

## HECTOR VEGA

18. Vega trabajaba como mecánico en el área de utilidades de Davis para mayo de 1999.

19. Vega tenía un locker asignado en el área de utilidades, el cual utilizaba. Este tenía otro locker pequeño en el área de lockers de A & W al cual no le daba ningún uso.

20. Vega nunca se cambió de ropa ni se desvistió en el área de lockers de A & W.

21. El área de lockers de A & W está físicamente separada del área de los baños por una pared.

22. Los baños de A & W no tienen ducha. En Davis, hay otras áreas de baño que tienen ducha.

23. Vega nunca ha escuchado una sola grabación de la voz de algún empleado de Davis. Este desconoce si Davis grabó conversaciones de empleados.

## LUIS MERCADO ORTIZ

24. A mayo de 1999, Luis Mercado Ortiz trabajaba como mecánico en el área de utilidades de Davis.

25. Mercado no tenía un locker en el área de A & W. Ni siquiera frecuentaba el área del baño ni el área de lockers de A & W.

26. Mercado no escuchó grabación alguna de su voz. Tampoco escuchó grabación alguna de la voz de algún otro empleado de Davis.

## RAMONITA GINES

27. Ramonita Ginés ocupaba la posición de group leader en el área de A & W para el 20 de mayo de 1999.

28. Ginés no tenía locker en el área de los lockers de los caballeros de A & W.

29. Ginés nunca ha escuchado grabaciones de empleados de Davis. Además desconoce si en Davis se estaban grabando conversaciones de empleados y si habían cámaras instaladas.

30. Ginés desconoce si en Davis habían micrófonos.

## ARIEL VAZQUEZ

31. Ariel Vázquez ocupaba la posición de operador de Braid Coating en Davis para mayo de 1999.

32. Vázquez tenía su locker en el área de lockers de caballeros de A & W. Este utilizaba diariamente su locker sólo para recoger y guardar su indumentaria de trabajo, que consistía de espejuelos de seguridad, redecillas y el cubre barba.

33. No hay inodoros ni lavamanos en el área donde están los lockers.

*34. El área de los baños y el área de los lockers de A & W están separadas por una pared y dos pasillos grandes a los lados.*

*35. Vázquez nunca ha escuchado grabaciones de voz de empleados de Davis ni ha visto videos de empleados."*

Inconformes con el dictamen, los apelantes presentaron *"Moción de Reconsideración y/o de Relevo de Sentencia"*, la que no fue considerada por el Tribunal, por lo que no se interrumpió el término para acudir en apelación. No obstante, oportunamente, los apelantes presentaron su recurso alegando los siguientes errores:

*"1. Erró el Honorable Tribunal de Instancia al eliminar y no considerar en su evaluación de la prueba el Anejo II del Alegato de la parte apelante.*

*2. Erró el Honorable Tribunal de Instancia al concluir que no se le violó el derecho a la intimidad a los demandantes-apelantes por haberse instalado y puesto en funciones un sistema de cámara (s) oculta (s) de video en el área de los "lockers" de "A & W"."*

El 6 de agosto de 2001, Davis, presentó *"Moción de Desestimación de Recurso de Apelación"*, a la que se opusieron los apelantes en escrito intitulado *"Moción en Oposición a Otra Solicitando Desestimación"*. Presentada *"Réplica a Moción en Oposición a Otra Solicitando Desestimación"* y *"Moción para Incluir Copia de Resolución y en Apoyo de Solicitud de Desestimación"*, el 30 y 31 de agosto de 2001, respectivamente; emitimos Resolución Interlocutoria el 16 de octubre de 2001, en la que declaramos **No Ha Lugar** la moción de desestimación presentada por la apelada. Inconforme con nuestra Resolución, la apelada presentó el 16 de noviembre de 2001, ante la Secretaría del Tribunal Supremo *"Petición de Certiorari"* (CC-2001-930). Denegada su expedición, procedemos con el beneficio de los escritos de las partes a resolver las controversias ante nuestra consideración.

### III

Disponen tanto la Constitución de Estados Unidos, 1 L.P.R.A., Enmienda Cuarta, como la Constitución del Estado Libre Asociado de P.R., 1 L.P.R.A. Art. II, § 7 y 8, en lo pertinente, lo siguiente:

*" Enmienda Cuarta*

*No se violará el derecho del pueblo a la seguridad de sus personas, hogares, documentos y pertenencias, contra registros y allanamientos irrazonables, y no se expedirá ningún mandamiento, sino en virtud de causa probable, apoyado por juramento o promesa, y que describa en detalle el lugar que ha de ser allanado, y las personas o cosas que han de ser detenidas o incautadas.*

*Sección 7. Derecho a la vida, a la libertad y al disfrute de la propiedad; pena de muerte, no existirá; debido proceso; igual protección de las leyes; menoscabo de contratos; propiedad exenta de embargo.*

*Se reconoce como derecho fundamental del ser humano, el derecho a la vida, a la libertad y al disfrute de la propiedad. No existirá la pena de muerte. Ninguna persona será privada de su libertad o propiedad sin debido proceso de ley, ni se negará a persona alguna en Puerto Rico la igual protección de las leyes. No se aprobarán leyes que menoscaben las obligaciones contractuales. Las leyes determinarán un mínimo de propiedad y pertenencias no sujetas a embargo.*

*Sección 8. Protección contra ataques a la honra, a la reputación y a la vida privada.*
*Toda persona tiene derecho a protección de ley contra ataques abusivos a su honra, a su reputación y a su vida privada o familiar."*

Nuestra Constitución, a diferencia de la Constitución de Estados Unidos, consagra expresamente el derecho a la intimidad. *"[D]erecho fundamental que goza de la más alta jerarquía en nuestro entramado de derechos constitucionales. Este derecho opera ex proprio vigore y puede hacerse valer aun entre personas privadas."* (Citas Omitidas). *Unión de Trabajadores de la Industria Eléctrica y Riego v. Autoridad de Energía Eléctrica,* Op. de 13 de octubre de 1999, **99 J.T.S. 156**, a la pág. 201. Por tratarse de un derecho invocable frente a personas privadas, un patrono viene obligado a no infringir la zona de autonomía individual de sus empleados que protege el derecho a la intimidad. Por ello, una violación al ámbito individual constitucionalmente protegido, impone al patrono la obligación jurídica de reparar el daño causado. Sin embargo, para probar las alegaciones de una causa de acción por violación al derecho a la intimidad originada en el contexto de una relación laboral, el reclamante debe presentar prueba de actuaciones concretas del patrono que incidan sobre áreas de su vida íntima o familiar. *Segarra Hernández et al v. Royal Bank de P.R. et al,* Op. de 1 de abril de 1998, **98 J.T.S. 37**, a la pág. 751. Un mero sentimiento de incomodidad en el empleo por alguna situación laboral, no configura una violación del derecho a la intimidad imputable al patrono. *Id,* a la pág. 753.

En el caso de autos, los apelantes señalan como segundo error, que erró el Tribunal al determinar que Davis no le violó el derecho de intimidada los apelantes al haberse instalado y puesto en funciones un sistema de cámaras de video ocultas en el área de los *"lockers"* de *"A & W"*. De entrada, señalamos que los co-apelantes Ramonita Ginés Batista y Luis Mercado Ortiz, no tenían un *"locker"* asignado en el área de A & W. Por otra parte, Héctor Vega Miranda, aunque tenía un *"locker"* asignado en dicha área, no lo utilizaba según estipulado, ya que utilizaba el asignado en el área de utilidades. Así pues, sólo Juan Ramón Montoyo Colón, José Raúl Rosado González, y Ariel Vázquez poseían *"standing"* para reclamar habérseles violado su derecho a la intimidad con la ubicación de las cámaras de video en el área de los *"lockers"*.

En *Smith v. Maryland,* 442 U.S. 735 (1979); 99 S. Ct. 2577 (1979), el Tribunal Supremo de Estados Unidos consistente con lo resuelto en *Katz v. United States,* 389 U.S. 347 (1967); 88 S. Ct. 507, resolvió que la aplicación de la Cuarta Enmienda de la Constitución de Estados Unidos, dependerá de si la persona que invoca su protección puede reclamar una razonable o legítima expectativa de privacidad. La interrogante de si existe una expectativa razonable de privacidad generalmente implica cuestionar: (1) si la persona con su conducta exhibió poseer una expectativa de privacidad, es decir que éste haya demostrado que desea preservar algo en privado; y (2) si la expectativa de privacidad del individuo es tal que la sociedad está preparada a reconocerla como razonable. Véase, además, *Oliver v. United States,* 466 U.S. 170 (1984); 104 S. Ct. 1735 (1984).

De igual forma expresó la Corte de Apelaciones para el Primer Circuito, en Apelación de decisión tomada por la Corte de Distrito de Puerto Rico, en el caso *Héctor Vega Rodríguez v. Puerto Rico Telephone Company,* 110 F. 3d 174 (1997), (First Circuit) lo siguiente:

*"Intrusions upon personal privacy do not invariably implicate the Fourth Amendment. Rather, such intrusions cross the constitutional line only if the challenged conduct infringes upon some reasonable expectation of privacy. See Smith v. Maryland, 442 U.S. 735, 740 (1979). To qualify under this mantra, a privacy expectation must meet both subjective and objective criteria: the complainant must have an actual expectation of privacy, and that expectation must be one which society recognizes as reasonable. See Oliver v. United States, 466 U.S. 170, 177 (1984); Smith, 442 U.S. at 740. Determining the subjective component of the test requires only a straightforward inquiry into the complainant's state of mind..."* .

Evaluemos, pues, si de la totalidad de los hechos se desprende que los co-apelantes Juan Ramón Montoyo Colón, José Raúl Rosado González, y Ariel Vázquez, tenían una expectativa razonable de privacidad en el área de los lockers de A & W.

Según se desprende de los hechos estipulados (los que no están en controversia), el área de los *"lockers"* en que se localizó la cámara de video, se encuentra separada por una pared del área en la que se encuentran los

inodoros y lavamanos. Además, tampoco existen espejos a través de los cuales pudiera en forma alguna captarse imágenes de quienes utilizaran el área de los baños. Por otra parte, los propios apelantes reconocieron que ellos guardaban en sus *"lockers"* indumentaria de trabajo y que no se cambiaban de ropa en dicho lugar. Finalmente según lo estipulado, el área donde ubican los *"lockers"* puede ser observada por quienes pasen caminando por el pasillo. Es decir, que la expectativa de privacidad que tenían los apelantes, si alguna, era mínima.

Así pues, tomando en consideración la totalidad de las circunstancias, es decir: (1) los sucesos de vandalismo acaecidos; (2) las amenazas de bomba; (3) la cesantía de más de cien empleados de sus funciones; (4) la ausencia de prueba de que las cámaras de video grabaran audio; y (4) el hecho de que hemos concluido que los apelantes no tenían una expectativa de intimidad en el área de los *"lockers"* en que ubicaba una de las cámaras de seguridad, forzoso es el concluir que el segundo error no fue cometido.

Por último, alegaron los apelantes en su primer señalamiento que erró el Tribunal al eliminar y no considerar en su evaluación de la prueba, el anejo II del alegato de los apelantes, consistente en comunicación informando que debido a los incidentes de falsos avisos de bombas ocurridos en la semana del 7 de mayo de 1999, se reforzaban los sistemas de seguridad en la planta. Alegan que el referido documento no se debió excluir de las estipulaciones que se estaban sometiendo porque formaba parte del expediente del Tribunal. Veamos.

Según informado por los apelantes, por acuerdo unánime de éstos con la apelada, y con la anuencia del Tribunal, el caso sería resuelto por las estipulaciones sometidas, las que de acuerdo a lo ya informado, fueron acordadas a raíz de la celebración de varias reuniones entre las partes. Las partes estuvieron de acuerdo en que así se sometería el caso, sin que ninguna de ellas expresara reparo a la orden dictada por el Tribunal a tales efectos. Aparentemente, en el transcurso de realizar las estipulaciones, los apelantes no expresaron deseo alguno de que el referido documento (ahora en controversia), fuera estipulado.

No obstante, aun cuando el Tribunal considerara el documento por formar parte de los autos originales, a nuestro juicio, en nada hubiera variado la decisión del Tribunal. Como indicáramos anteriormente, los apelantes no tenían expectativa de intimidad en el lugar alegado, a pesar de tratarse de un área de *"lockers"*. Nótese que no se trata de un registro en el interior de los *"lockers"*, sino de captar imágenes, imágenes que podían ser captadas por cualquier persona que estuviera en esa área. A tales efectos, señaló la Corte de Apelaciones para el Primer Circuito en el caso *Héctor Vega Rodríguez, et al v. Puerto Rico Telephone Company, et al., supra*, que el mero hecho de que la observación vaya acompañada de una cámara de video en lugar del ojo humano, y que se grabe en una cinta en lugar de la mente de algún supervisor, no convierte un acto constitucionalmente inocente en uno constitucionalmente prohibido. Por lo tanto, el primer error tampoco fue cometido.

En atención a lo expuesto confirmamos la Sentencia emitida el 22 de mayo de 2001, por el Tribunal de Primera Instancia, Sala Superior de Arecibo.

Lo acordó el Tribunal y lo certifica la Secretaria General.

Aida I. Oquendo Graulau
Secretaria General

**ESCOLIO 2002 DTA 79**

**1.** Al igual que el Tribunal de Primera Instancia, hemos separado las estipulaciones en aquellas generales y las correspondientes a cada co apelante.